# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

FOURTH DISTRICT—FEBRUARY TERM, 1900.

## William R. Borders v. Frederick Rury.

1. CONTRACTS—*Requisites for a Recovery for a Breach of.*—A party to a contract can not recover damages for the non-performance of the same by the other party when he is himself in default in the performance of the conditions imposed upon by such contract.

Assumpsit.—Breach of contract. Appeal from the County Court of Randolph County; the Hon. WARREN W. WILSON. Judge, presiding. Heard in this court at the February term, 1900. Affirmed. Opinion filed September 8, 1900.

**Statement.**—This is an action on a plea of trespass on the case on promises, and is based upon the following contract:

"In consideration of one dollar to me in hand paid by W. R. Borders, of Sparta; Ill., and other good and valuable consideration, I hereby agree to ·give to the said W. R. Borders an option of purchase on my farm, consisting of 200 acres, in sections 6 and 7, T. 6 S., R. 4 W., in Perry county, Illinois, being the same land now occupied by me, for a period of thirty days from this date, and for the sum of $5,000; this option of purchase is largely in the nature of an agency between the said parties, by which I am to realize the net sum of $5,000 for said 200 acres, and in furtherance of this purpose, agree that I will assist in any manner possible the said Borders to make a sale of said farm; and should any person or persons, either with the said Borders, or in his absence, make application for said farm,

to faithfully represent that said farm has been sold to said Borders, and shall make such further statements and representations not inconsistent with the facts and good conscience, to enable the said Borders to complete the sale within the option period; should the said Borders make a sale of the farm, Rury shall receive the full sum of $5,000, and Borders to receive as his compensation whatever sum he may be able to realize above that sum; that if the said farm is sold for the sum of $5,000, or any price above that sum, there shall be no commission charged by the said Borders, but the said Rury shall receive the just and full sum of $5,000, and no more; the said Rury consents to agree to any reasonable terms on deferred payments that will enable the said Borders to negotiate a sale. It is further agreed that if the said Borders has a party with whom he is about to close a deal at the expiration of thirty days, that an additional ten or fifteen days will be given within which to complete the deal with the said party, upon the same terms as stated above; the said Rury agrees to furnish an abstract showing a perfect title to the place; it is understood, however, that there are mortgages now on the lands aggregating about $1,900; that the sale shall be made subject to these mortgages; the said Rury agrees that if the sale is made he will give possession of the house and land not occupied by growing wheat, within thirty days from date of sale, and sooner if possible; the purchaser shall receive one-third of the growing wheat, and the said Rury agrees to harvest the crop and to deliver one-third of the wheat free in the half-bushel at the thresher. Should the said Rury not consent to give one-third of the wheat, actual payment shall not be required until actual possession is given of all the land.

Given under my hand and seal this 11th day of February, A. D. 1898.

FREDERICK RURY. [SEAL.]"

"If everything is sold, personal and real estate, possession to be given at once. If wheat is retained by Rury, possession to be given August 1st, and if money paid at time of sale, discount of six per cent to August 1st shall be allowed. If farm near Coulterville suits, and deal is made on it, this agreement shall be void. Chas. Rury shall have the preference in the purchase of the above Rury farm.

FREDERICK RURY. [SEAL.]"

The declaration sets out the contract in full. It then avers that the plaintiff, in pursuance of said instrument,

proceeded to negotiate with different parties for the sale of the land, and having satisfied himself that he could handle the farm at the price named in the option, notified defendant in writing, before the option expired, and demanded an abstract showing perfect title; but that defendant failed and refused to furnish an abstract, and refused to let plaintiff have the land.   It further avers that defendant, before the expiration of the option, elected to keep the growing wheat, and not to surrender possession until the 1st of August.

It further avers that after plaintiff had notified defendant in writing, the option still existing, and while plaintiff was relying upon the purchase he had made, and was waiting for an abstract, and for the time to arrive when he would be entitled to a deed and possession, and payment of the contract price was to be made, the said defendant sold the same land to one William Brunes for $6,000.   It avers that plaintiff was ready, able and willing at all times after he notified defendant that he would take the farm, to take and pay for the same according to the terms of the contract, and so notified defendant, etc., whereof the defendant has become liable to pay plaintiff $1,000, etc.

To which declaration the general issue was pleaded. Verdict and judgment for defendant.

C. R. HAWKINS and A. G. GORDON, attorneys for appellant.

R. W. S. WHEATLEY and RALPH E. SPRIGG, attorneys for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

An analysis of the contract sued on, shows the following conditions:

It is under seal, dated February 11th, and signed by appellee, Rury, only.   It gives to appellant, Borders, an option to purchase the farm, for thirty days, at $5,000, stating that his option of purchase is largely in the nature of an agency.

Appellee was to receive $5,000 net, and Borders all that he was able to realize above that amount. Appellee was to assist in making a sale, and was to represent to any persons applying to him to buy, that he had sold the farm to appellant.

If appellant, at the close of the thirty days, had a party with whom he was about to close a deal, an additional ten or fifteen days was to be given him to complete the deal.

Appellee was to furnish an abstract showing perfect title.

If a sale was made, appellee was to give possession of the house and land, not occupied by growing wheat, in thirty days.

If everything was sold, personal as well as real estate, possession was to be given at once.

Appellee had an option to retain the growing wheat, which, if he elected to do, possession was not to be given until August 1st, at which time payment was to be made.

On March 7th appellant wrote appellee as follows:

"SPARTA, ILL., March 7th, 1898.
MR. FRE. RURY, Cutler, Ill.

DEAR SIR: I beg to advise you that according to the option given me for the sale of your farm, I have found a purchaser, and will take your farm on the terms mentioned in your contract with me. Shall I go ahead and get the abstract, or will you do it? You may consider the sale of the farm made as per our contract. I will give you the details later, and simply wish to advise you at an early date of the sale.             Yours truly,
W. R. BORDERS."

Shortly after the receipt of this letter, appellee brought to appellant an abstract, to which appellee objected as not showing a perfect title. It did not show title to one forty-acre tract, and did not show certain mortgages discharged, which appellee said were paid.

On March 12th appellant again wrote appellee, stating that he had hoped to have seen him at his place, but the roads were muddy, and that he would postpone trip until the next week; calls attention to having written him some days before that he had found a purchaser for his farm and would take it according to terms of agreement. On March 22d appellant again wrote appellee, urging him to have abstract

completed, and stating that he did not want any unnecessary delay. Up to this time appellant appears to have done everything that was required under the contract.

If negotiations had stopped here, the right of appellant to recover would be clear. The doubt in the case arises from what follows.

Appellee completed his abstract showing title, and through his son, Louis Rury, on March 23d, notified appellant of the fact, and an agreement was then made, Louis acting for his father, that both parties should meet at Cutler on the next day to close the transaction. Louis testifies that appellant fixed the date. Appellant testifies that he agreed to meet them if he could. Appellant further testifies that "I told Louis I would go to Percy and from there drive over to Cutler; that on that day I went to Percy, got a team and went to Willetsville, and then started to Cutler, and met Louis Rury, who told me that his father had been to Cutler, but he thought he had gone home; that it was getting late and I found I would not have time to do anything and get to Percy for four o'clock train, so told Louis that I would arrange matters soon, and drove back to Percy."

Louis Rury testifies that he understood they were to meet at his father's, about three-quarters of a mile from Louis' house, and go from there to Cutler; that appellant came to his house between three and four o'clock on the 24th and said that he did not have time to go to Cutler and catch his train (at Percy) and that he "wouldn't miss his train for any damned trade." Appellant denies this. Appellee waited at his house for appellant, as he understood they were to go from there to Cutler, until 2 p. m., when he and his wife went to Cutler and waited for him there. He not coming, they returned home. Four days later, on March 28th, appellant wrote appellee in substance as follows:

"I went to Percy last Friday, hired a team and drove down below Willetsville, and came back by the Gibney or Culley farm. I met so many people that I do business with that it took more of my time than I counted on. I started to drive to your place and got as far as your son Louis' and stopped and chatted with him quite a while, and when I looked at my time, that I only had about twenty

minutes to make the train at Percy. I did not want to have to drive in the mud to Sparta, and therefore did not want to miss the train, and consequently did not have time to go out to your place, but fully intended to go to your place when I started out. I want to go to St. Louis to-morrow but will try to go down to your place one day this week and close up our matters. I understand you have had the abstract corrected and would be greatly obliged if you would send it to me so that I can examine it at my leisure," etc.

On the same day appellant wrote to Gus Stahlberg, explaining, as in his letter of the same date to appellee, why he had not gone to Fred Rury's, and stating, " I understand the old man has his abstract up to date and things are about in readiness to close a deal."

On April 20th appellant again wrote appellee, demanding that he comply with his contract, and stating that he was ready and willing to comply with his part of it. Further stating that he had verbally agreed with Wm. Brunes for the purchase of the place.

Brunes, called as a witness for appellee, testifies that he would not buy from appellant; that he saw appellee before he bought the farm and that appellee told him that Borders had a right to buy the place for thirty days—to go to appellant—and that he, Brunes, told him he would not buy from appellant; that appellant came to see him and tried to sell it to him for $6,000, and he told him he would see appellee. It is also in evidence that Rury told Borders, when he made the contract, that two men wanted the place, and probably Brunes was one of them.

It will be seen from this recital of the evidence that the case turns upon the issues of fact involved in the proposed meeting at Cutler, on March 24th. The thirty days' option had then expired. If appellant and appellee agreed to meet there on that day and close the deal, and appellee kept his part of the agreement, and was there with his completed abstract, and appellant made default, for the reason that the roads were muddy, and he did not want to drive to Sparta, and that he had met so many people that day that it would make him too late for the train at Percy, and

P. H. Murphy Mfg. Co. v. Isbester.

stating in his letter of March 28th, three days later, that he would "try to go down to your place one day this week," then he, appellant, was in default, and appellee was at liberty to sell the land, the sale of which was not made until some time in April.

While there is some conflict in the evidence, there is sufficient evidence, when taken alone, to warrant the jury in finding that appellant was thus in default, and when this is the case a verdict must stand. Appellant claims error in the refusal of the court to give the following instruction:

" You are instructed that all contracts in regard to sale of real estate, to be valid, must be in writing, and that a written contract under seal can not be changed by parol; and though you may find that the parties to this suit may have agreed to meet at Cutler to consummate this agreement, and that Borders failed to go, that fact does not prevent him from insisting upon the performance of the original contract according to its terms."

There was no error in refusing this instruction. The reference in the first part of the instruction was not pertinent to any phase of the case. Appellee was not seeking to change the terms of the contract. His defense was that appellant did not bring himself within the terms of the contract, but made default on his part, and thereby released appellee by the failure to meet him at Cutler on the 24th of March. The latter part of the instruction does not state the law correctly. Judgment affirmed.